PFLANZ, Appellant,

v.

CITY OF CINCINNATI, Appellee.

[Cite as *Pflanz v. Cincinnati,* 149 Ohio App.3d 743, 2002-Ohio-5492.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010305.

Decided Oct. 11, 2002.

Tobias, Kraus & Torchia and Sharon Sobers, for appellant.

Fay D. Dupuis, Cincinnati City Solicitor, and Mark C. Vollman, Assistant City Solicitor, for appellee.

SUNDERMANN, Judge.

{¶ 1} Plaintiff-appellant Paul Pflanz appeals from the summary judgment entered by the Hamilton County Court of Common Pleas in favor of the defendant-appellee, the city of Cincinnati. For the reasons that follow, we affirm.

## FACTS

{¶ 2} Pflanz was a Cincinnati employee from 1971 until July 7, 1995. In 1973, Pflanz began working as a firefighter. As part of his work, he received bomb training from the FBI. In September 1989, Pflanz injured his back when he attempted to catch a woman being transported on a stretcher when the stretcher latch failed. Sometime thereafter, Pflanz applied for and received workers' compensation benefits for his back injury. Although Pflanz returned to active duty, he continued to have back problems. In early 1994, the city physician examined Pflanz and determined that he was no longer qualified to perform the duties of a firefighter. The city physician recommended medical separation.

{¶ 3} On May 13, 1994, Pflanz received a letter informing him that he was being medically separated due to his inability to perform his job. Rather than being immediately separated, however, Pflanz was placed in a light-duty position by the Cincinnati Fire Division. In August 1994, Pflanz requested a reasonable accommodation for his disability. On June 1, 1995, William Gustavson, Cincinnati's Director of Safety, wrote Pflanz to offer him a technician's position in the Police Division of the Safety Department at approximately $10,000 less salary. Pflanz was given until June 11, 1995, to make a decision regarding the position.

{¶ 4} On June 8, 1995, Pflanz wrote to Gustavson. Pflanz indicated that it was difficult for him to make a decision about the position when he did know much about it. Later that day, William Worley, an Assistant Fire Chief, wrote to Pflanz that he was extending Pflanz's deadline for responding until June 18, 1995. On June 19, 1995, Pflanz filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). Meanwhile, union requests extended

Pflanz's time limit to respond to the technician's position until July 2, 1995. On July 2, 1995, Pflanz and a union representative personally met with Gustavson to discuss the position. After that meeting, Pflanz's deadline for responding to the position was again extended until July 7, 1995. When Pflanz failed to respond by that deadline, he was medically separated. Sometime after his separation, Pflanz applied for and was granted disability benefits that he continues to receive.

{¶ 5} Prior to his separation, Pflanz had begun participating in a bulletin board for firefighters on the Internet, which was hosted by TriState Online. After his separation, Pflanz continued to participate in the bulletin board, using it to vent his frustrations with Fire Division management and the pension board. On June 7, 1996, Pflanz posted on the bulletin board an e-mail message that referred to a recent incident in Mississippi where a disgruntled firefighter, who had become so distraught over his treatment by the fire chief, went to the firehouse and killed four of his fellow firefighters. In the opening portion of his e-mail message, Pflanz stated:

{¶ 6} "Perhaps [Fire] Chief [Thomas E.] Steidel and the mayor [Roxanne Qualls] should read the response and opinion of the IAAFF regarding the MS firefighters. Considering the fire department permanently crippled me by placing defective equipment on line; separated me without benefits; deprived my family of medical insurance and income and I doubt that I'm the only one—the very same conditions exist right here in the Queen City. A man can only be expected to take so much and July 7 will be my one year anniversary of separation. And it is also when my worker's compensation benefits run out leaving nothing but welfare as an alternative."

{¶ 7} Alarmed by the threats in Pflanz's e-mail posting, the Fire Division requested that the Cincinnati police issue a "hazard poster" on Pflanz for circulation to the Fire Division. The hazard poster stated that Pflanz "had made disparaging public statements about the division and city Administration." The poster also stated that Pflanz was "trained as a bomb tech" and had "written comments supporting radical right wing causes." It urged all members of the Fire Division to "use caution when dealing with suspicious mail or packages."

{¶ 8} On November 13, 1996, the EEOC dismissed Pflanz's initial charge of discrimination. In the meantime, the city's manufacture and distribution of the "hazard poster" had prompted Pflanz to file a second charge with the EEOC. In his second charge, Pflanz alleged that the city had published the "hazard poster" in retaliation for his filing of the EEOC charge in June 1995. On September 29, 1998, the EEOC found probable cause to believe that the city's issuance of the "hazard poster" was retaliatory. Sometime thereafter, Pflanz applied for and was granted workers' compensation benefits for a psychological condition stemming from his injury and the city's publication of the hazard poster.

{¶ 9} In March 2000, Pflanz filed suit against the city. In his complaint, he set forth a state claim for failure to accommodate his disability under R.C. 4112.02(A), as well as a claim alleging that his discharge was in retaliation for asserting his right to be accommodated under R.C. 4112.02(I). He also alleged federal and state retaliation claims relating to the "hazard poster" that the Fire Division had posted. Those claims were brought under the anti-retaliation provisions of the Americans with Disabilities Act, Section 12101 et seq., Title 42, U.S.Code, and R.C. 4112.02. In addition, Pflanz alleged that he had been wrongfully discharged in violation of public policy under Ohio law.

{¶ 10} On April 19, 2001, the trial court granted summary judgment to the city on all five claims. Pflanz now appeals, raising four assignments of error. Because we find that none ·of the assignments to has merit, we affirm the judgment of the trial court.

## ANALYSIS

{¶ 11} This court reviews a trial court's entry of summary judgment de novo.[1] A motion for summary judgment is properly granted if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[2] The moving party "bears the burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims."[3] When the moving party discharges that burden, the nonmoving party then has a reciprocal burden to set forth "specific facts" by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists.[4]

### Reasonable–Accommodation Claim

{¶ 12} In his first assignment of error, Pflanz argues that the trial court erred in granting summary judgment on his claim that the city failed to

---

1. See *Wille v. Hunkar Laboratories, Inc.* (1998), 132 Ohio App.3d 92, 96, 724 N.E.2d 492.

2. See Civ.R. 56(C).

3. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

4. See *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904.

accommodate his disability as required by R.C. 4112.02. Pflanz claims that the city medically separated him because of his disability, and that the city failed to provide a reasonable accommodation by offering him a police technician position. While the city agrees that Pflanz's back condition constituted a physical impairment, it argues that Pflanz was not disabled as defined by R.C. 4112.02 because this impairment did not substantially limit Pflanz's "major life activities."

{¶ 13} In order to succeed on his failure-to-accommodate claim, Pflanz had to show the following: (1) that he was disabled; (2) that his employer was aware of the disability; and (3) that he was an otherwise qualified individual with a disability in that he satisfied the prerequisites for the position and could perform the essential functions of the job with or without accommodation.[5] Because Ohio's handicap-discrimination law was modeled after the federal Americans with Disabilities Act ("ADA"), Ohio courts may seek guidance when interpreting the Ohio handicap-discrimination statute from regulations and cases that interpret the ADA.[6]

{¶ 14} In order to survive summary judgment, Pflanz initially had to show that a reasonable trier of fact could conclude that he was disabled and that, although disabled, he was able to perform the essential functions of the job he held or desired.[7] Thus, the first issue we must address is whether Pflanz fit the definition of a disabled person under the Ohio Revised Code.

{¶ 15} R.C. 4112.01(A)(13) defines "disability" in this manner:

{¶ 16} "[1] a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; [2] a record of a physical or mental impairment; or [3] being regarded as having a physical or mental impairment."

{¶ 17} Pflanz claims that he was actually disabled because he had been diagnosed with a chronic lumbar sprain/strain syndrome, degenerative disc disease, and retrolesthesis (a displacement of the vertebrae). Pflanz further argues that his back condition substantially limited the major life activities of lifting, living with pain, and working.

---

5. See *Shaver v. Wolske & Blue* (2000), 138 Ohio App.3d 653, 663–664, 742 N.E.2d 164 (wherein the Tenth Appellate District held that "[t]he *McDonnell Douglas* [*Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] prima facie case and burden-shifting analysis do not apply in a failure-to-accommodate case").

6. See *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204.

7. See *Burns v. Coca–Cola Enterprises* (C.A.6, 2000), 222 F.3d 247, 257.

{¶ 18}   R.C. Chapter 4112 does not define "substantially limits," so we must look to federal law for that definition.   Under the ADA regulations, "substantially limits" means the following:

{¶ 19}   "(i) Unable to perform a major life activity that the average person in the general population can perform;  or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity."[8]

{¶ 20}   In addition, the regulations identify factors that a court should consider when determining whether an individual is substantially limited in a major life activity.   Those include "(1) the nature and severity of the impairment;  (2) the duration or expected duration of the impairment;  and (3) the permanent or long-term impact or the expected permanent or long-term impact of or resulting from the impairment."[9]

{¶ 21}   Pflanz first contends that his chronic and ongoing back condition substantially limited the major life activity of lifting.   Pflanz relies on a note from his treating physician, Thomas R. Sullivan, D.C., dated February 22, 1994, in which Dr. Sullivan stated that Pflanz could perform "no lifting over 10 lbs, no sitting longer than 60 minutes at a time.   Same for walking/standing for 4 weeks 3–22–94."   The record also contains an undated memorandum entitled "Physician's Limited Duty Work Restrictions," initialed by the city's physician, Dr. Berenson, stating that Pflanz "c[ould] perform limited light lifting and bending," but "for heavy objects he sh[ould] have assistance from on duty personnel."

{¶ 22}   Before we can determine whether Pflanz presented sufficient evidence from which a reasonable fact finder could conclude that he was substantially limited in the major life activity of lifting, we must first determine whether Ohio discrimination law recognizes lifting as a major life activity.   Although the ADA regulations recognize lifting as a major life activity,[10] "lifting" is not specifically mentioned as a major life activity under R.C. 4112.01(A)(13).   Pflanz relies on two cases, *Wooten v. Columbus*[11] and *Huberty v. Esber Beverage Company*,[12] to

---

8.   Section 1630.2(j)(1), Title 29, C.F.R.

9.   Section 1630.2(j)(2), Title 29, C.F.R.

10.   Other major life activities could include reaching, sitting, or standing.   Section 1630, Title 29, C.F.R., Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, Section 1630.2(*l*).

11.   (1993), 91 Ohio App.3d 326, 632 N.E.2d 605.

12.   (July 3, 2000), 5th Dist. No. 1999CA00346, 2000 WL 963108.

support his argument that his back condition substantially limited the major life activity of lifting. That reliance is misplaced.

{¶ 23} In *Wooten*, a former employee, who suffered from a substantial hearing loss and a hernia, was terminated from his job as a provisional plant maintenance mechanic while on disability leave.[13] The employee testified that his hernia condition prevented him from lifting weights in excess of twenty pounds, which interfered with his ability to work and to perform activities such as carrying groceries, pushing the lawn mower, bathing his dog, and changing a tire.[14] In holding that the employee had presented a genuine issue of material fact as to whether he was "disabled" under R.C. 4112.01(A)(13), the Tenth Appellate District reasoned that the employee's impairments substantially limited "his ability to hear and to perform manual tasks and work."[15] The court did not mention that the employee's hernia condition substantially limited the major life activity of lifting.

{¶ 24} Similarly in *Huberty*, the Fifth Appellate District concluded that testimony from a former employee's physician created a genuine issue of material fact as to whether, under the ADA, the employee's shoulder injury substantially limited his ability to perform manual tasks and/or to work.[16] The court further stated that "[a]lthough the questioning never specifically focused on the issue, reasonable minds could [have found that] appellant also had a substantial limitation on the major life activities of lifting and reaching."[17] The court then stated that it was convinced that a genuine dispute existed as to whether the appellant was disabled under the ADA.[18] In addressing the employee's claim that he was disabled under Ohio's discrimination statute, the court held that the employee had pointed to specific evidence in the record that he "was substantially limited in the major life activity of performing manual tasks," such that a genuine issue of material fact existed as to whether the employee was "disabled" pursuant to R.C. 4112.02(A).[19] The court did not mention that the employee was substantially limited in the major life activity of lifting under Ohio law, nor have we found

---

13.  *Wooten*, supra, at 332–333, 632 N.E.2d 605.

14.  Id. at 331, 632 N.E.2d 605.

15.  Id. at 333, 632 N.E.2d 605.

16.  *Huberty*, supra.

17.  Id.

18.  Id.

19.  Id.

any other Ohio appellate court opinions that have recognized lifting as a major life activity under Ohio's statute.[20] Because lifting is not a major life activity under R.C. 4112.01(A)(13), Pflanz's argument that he was substantially limited in the major life activity of lifting must fail as a matter of law.

{¶ 25} Pflanz further contends that his chronic and ongoing back condition substantially limited the major life activity of performing manual tasks. Pflanz, however, did not raise this argument below. As a general rule, appellate courts cannot consider an argument that was not raised in the trial court.[21] Because Pflanz raises this issue for the first time on appeal, we are precluded from addressing it.

{¶ 26} Pflanz next argues that he was disabled because he suffered from constant pain. Pflanz relies on an unsworn medical report by Steven Skurow, D.C., which was dated April 2, 1996, to support his argument. In his report, Dr. Skurow stated that Pflanz had indicated the following on an "Oswestry Pain Questionnaire:

{¶ 27} "1. His pain comes and goes and is very severe. 2. Washing and dressing increase the pain and he finds it necessary to change his way of doing [them]. 3. He can lift only very light weights at the most. 4. He cannot walk at all without increasing pain. 5. Pain prevents him from sitting more than ½ hour. 6. He cannot stand for longer then [sic] ½ hour without increasing pain. 7. Because of pain, his normal night['s] sleep is reduced by less than 3/4. He has hardly any social life because of the pain. * * * 9. Pain restricts all forms of travel. 10. His pain is gradually worsening (when questioned in more detail, he states that the pain has been fairly stable over the last several years). He rates his pain at approximately a 6/10 level."

{¶ 28} We begin our analysis by noting that "living with pain" is not listed as a major life activity under R.C. 4112.01(A)(13). Further, we have been unable to find any decisions by the Ohio Supreme Court or intermediate Ohio appellate courts that have held that "living with pain" constitutes a major life activity under R.C. 4112.01(A)(13). Although Pflanz argues that *Roush v. Weastec*[22] supports his argument that living with pain is a major life activity, we

---

**20.** Although the United States District Court for the Southern District of Ohio, Western Division, in *Nott v. Woodstock Care Ctr., Inc.* (Mar. 21, 2001), S.D. Ohio No. C–3–99–133, 2001 WL 1135057, has stated that "lifting has been recognized as a major life activity under Ohio law," we disagree. After carefully reviewing the cases upon which the district court relied, we cannot conclude that they support this conclusion.

**21.** App.R. 12(A); *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.* (1993), 67 Ohio St.3d 274, 279, 617 N.E.2d 1075; *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640.

**22.** (C.A.6, 1996), 96 F.3d 840.

disagree. In *Roush*, the Sixth Circuit held that an employee had presented a genuine issue of material fact under the ADA as to whether her bladder condition, which caused her extreme pain, substantially limited the major life activity of working.[23] Because living with pain is not a major life activity under Ohio's discrimination statute, we need not determine whether Pflanz presented sufficient evidence from which a reasonable fact finder could conclude that he is substantially limited in this regard.

{¶ 29} Pflanz also argues that his back condition constituted a disability because this condition substantially limited the major life activity of working. With reference again to federal law, ADA regulations provide that when an individual claims that a physical impairment substantially limits the major life activity of working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."[24]

{¶ 30} ADA regulations further provide that courts may consider the following additional factors:

{¶ 31} "(A) The geographical area to which the individual has reasonable access;

{¶ 32} "(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

{¶ 33} "(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)."[25]

{¶ 34} Although ADA regulations do not define the terms "class of jobs" and "broad range of jobs," the Appendix to Part 1630 provides notable examples of relevant limitations:

{¶ 35} "An individual who has a back condition that prevents [him] from performing any heavy labor job would be substantially limited in the major life

---

23. See id. at 844.

24. Section 1630.2(j)(3)(i), Title 29, C.F.R.

25. Section 1630.2(j)(3)(ii), Title 29, C.F.R.

activity of working because [his] impairment eliminates his * * * ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs."[26]

{¶ 36} Pflanz, relying on the ADA example, contends that he was substantially limited in the major life activity of working because his back condition prevented him from performing any job that involved substantial lifting or manual labor. To support his argument, Pflanz relies on the sworn vocational evaluator's report of Dr. Kenneth J. Manges. Dr. Manges stated the following in the "Evaluations' Conclusion and Recommendation" section of his report:

{¶ 37} "Pflanz is limited to jobs within the fire suppression industry without field responsibilities. He does not appear to be able to physically participate in outdoor activities and his level of generalized anxiety and agitation would be helped to be addressed before exposing him to any increasing stressful occupation responsibilities. From a vocational perspective, Pflanz has a permanent partial 90% vocational disability because of his inability to do other than sedentary work on a routine basis."

{¶ 38} With Dr. Manges's report construed in the light most favorable to Pflanz, it shows that Pflanz's impairment and its long-term impact were permanent. Manges's report further provided that Pflanz's restrictions limited him to sedentary jobs in the fire-suppression industry. In order for a reasonable factfinder to conclude that Pflanz was substantially limited in the major life activity of working, Pflanz still had to show that his back condition prevented him from performing a "broad class of jobs."

{¶ 39} The city contends that Pflanz was not limited in the major life activity of working because his back condition prevented him from performing only his duties as a firefighter. The city relies upon *Bridges v. Bossier*[27] to support its argument. In *Bridges*, the Fifth Circuit held that a firefighter applicant who had been disqualified from performing firefighter jobs based on a mild form of hemophilia was not substantially limited in the major life activity of working, because jobs involving routine exposure to extreme trauma, such as firefighting, constituted only a narrow class of jobs.[28]

{¶ 40} In *Columbus Civ. Serv. Comm. v. McGlone*,[29] the Ohio Supreme Court agreed with the *Bridges* court's interpretation that the position of firefighter did

---

26. Id. at Appendix to Part 1630.

27. (C.A.5, 1996), 92 F.3d 329, 334.

28. See id. at 332, 334.

29. (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204.

not constitute a broad class of jobs. In *McGlone*, a nearsighted firefighter applicant who had been removed from the city's eligibility list had argued that Columbus had discriminated against him on the basis of a disability, his visual impairment.[30] In rejecting McGlone's argument that he was disabled, the Ohio Supreme Court held that because he could pursue other employment besides a firefighter position, he was not substantially limited in the major life activity of working.[31]

{¶ 41} Because Manges's report stated that Pflanz's back condition limited his ability to work only in the fire-suppression industry and because such positions constituted only a narrow class of jobs, a reasonable factfinder could not have concluded that Pflanz was limited in the major life activity of working. Consequently Pflanz failed to present a genuine issue of material fact as to whether he was substantially limited in the major life activity of working. Thus, Pflanz has failed to demonstrate that he is disabled under Ohio's handicap-discrimination law.

{¶ 42} Even if we were to assume that Pflanz was disabled, summary judgment was still appropriate on his failure-to-accommodate claim because Pflanz did not meet the third element of the accommodation test—that is, he did not show that despite his disability he could perform the essential function of his former position with reasonable accommodations.

{¶ 43} Ohio law requires an employer to make reasonable accommodations to a disabled employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business.[32] A reasonable accommodation is "a reasonable adjustment made to a job and/or the work environment that enables a qualified disabled person to safely and substantially perform the duties of that position."[33] Reasonable accommodations may include job restructuring, the acquisition or modification of equipment or devices, a realignment of duties, the revision of job descriptions, or a modified part-time work schedule, transfer, reassignment, or hire into a vacant position.[34]

---

30. Id. at 574, 697 N.E.2d 204.

31. Id.

32. Ohio Adm.Code 4112–5–08(E)(1).

33. Ohio Adm.Code 4112–5–02(A).

34. See *Wooten v. Columbus* (1993), 91 Ohio App.3d 326, 333, 632 N.E.2d 605.

{¶ 44}   Under Ohio law, a disabled employee must propose an objectively reasonable accommodation.[35]   Once the employee does so, the employer is required to explore methods and alternatives to reasonably accommodate the employee prior to taking adverse action against the employee.[36]   The burden then shifts to the employer to demonstrate that the proposed accommodation is unreasonable or would impose an undue hardship on its business.[37]   "[W]here the employer has offered reassignment as a reasonable accommodation, the employee must offer evidence showing both that the position offered was inferior to [his] former job and that a comparable position for which the employee was qualified was open."[38]

{¶ 45}   The city initially argues that Pflanz was not a "qualified individual" because he was unable to perform the essential duties of his position as a firefighter.   The city's argument, however, ignores the fact that a "qualified individual with a disability" is defined as someone who "with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires."[39]   Thus, if Pflanz could establish that there was a vacant position into which he could have been transferred pursuant to then-existing civil service rules, whose duties he could have performed, he could claim protection under Ohio's handicap-discrimination law.

{¶ 46}   In support of his claim that he was a "qualified individual," Pflanz has identified four job classifications in which positions were available at the time of his medical separation and that were capable of being performed by someone with his medical restrictions:  (1) sworn firefighter positions, (2) civilian positions in the Fire Division, (3) positions in the Safety Department, and (4) positions elsewhere in the city.

{¶ 47}   City policy stated that a city employee who was being medically separated could request a reasonable accommodation.   The city's accommodation policy required that the city first look for a vacant position within the Fire Division.   If it could not find one, then it was required to look within the Safety Department, which was composed of the Fire, Police, and Telecommunications Divisions.   If no vacancy existed there, then the city had to search all of its

---

35.   *Monette v. Electronic Data Sys. Corp.* (C.A.6, 1996), 90 F.3d 1173, 1183.

36.   *Tuck v. HCA Health Serv. of Tennessee* (C.A.6, 1993), 7 F.3d 465.

37.   See *Hall v. United States Postal Serv.* (C.A.6, 1988), 857 F.2d 1073, 1080.

38.   See *Norville v. Staten Island Univ. Hosp.* (C.A.2, 1999), 196 F.3d 89, 99.

39.   See *Burns v. Coca–Cola Enterprises, Inc.* (C.A.6, 2000), 222 F.3d 247, 253;  See, also, *Stone v. Mt. Vernon* (C.A.2, 1997), 118 F.3d 92, 99.

departments for a vacant position. If an accommodation was offered and refused, the employee was to be terminated. Likewise, the employee was to be terminated if no vacancy could be located in the citywide search. The Fire Division was composed of sworn and civilian positions, all of which were civil service positions.

{¶ 48} Pflanz first argues that, during the time he sought an accommodation, a fire specialist position came open, for which he requested consideration. It is undisputed that the fire specialist position would have been a promotion. Pflanz argues, however, that a reasonable accommodation would have been for the city to permit him to sit for a civil service exam that was being administered for a fire specialist position.

{¶ 49} Pflanz has cited no case law holding that this is a reasonable accommodation, nor have we found any to support his argument. We thus turn to language in the EEOC's Compliance Manual, which states that an employer does not satisfy the reassignment duty merely by permitting a disabled employee to compete with others for a vacant position.[40] Accordingly, we hold that allowing Pflanz to sit for a civil service exam, where he would have competed with other candidates for the fire specialist position, was not an option as a reasonable accommodation.

{¶ 50} Pflanz also claims that there were civilian positions that were vacant in the Fire Division during the time that he requested reassignment, and that he could have performed in those positions despite his restrictions. He claims that there were dispatcher positions, clerk positions, a drill-school secretary position, and an audio-visual assistant position. Pflanz contends that the fire chief refused to offer him an accommodation in any of these positions because he had a policy of refusing to accommodate disabled employees, which was further evidenced by the fact that all firefighter personnel, even civilian personnel, had to be able to engage in fire suppression. Pflanz further contends that because there was no chance that the employees holding these positions would have been called out to fight fires, a reasonable accommodation would have been reassignment to one of these positions.

{¶ 51} The city, contends, however, that regardless of the Fire Division's policy, Pflanz failed to identify vacancies in these positions, and that he failed to show that he was otherwise qualified for any of these positions despite his disability. Thus, the city concludes that reassignment to a position in the Fire Division was not a reasonable accommodation. We agree.

---

40. See EEOC Enforcement Guidance: Reasonable Accommodation & Undue Hardship under the Americans with Disabilities Act, EEOC Compliance Manual (CCH), Part 6908, at 5455–5456.

{¶ 52}  Because the city had already offered Pflanz reassignment to a vacant position as a police technician, Pflanz had to show that this position was inferior to his former job and that a comparable position existed for which he was qualified.  In essence, Pflanz was required to show that a comparable position was vacant and to prove that he could safely and substantially perform in that position.[41]

{¶ 53}  In this case, Pflanz failed to demonstrate that comparable positions were vacant at the time he sought accommodation.  Although Pflanz points to a city vacancy list dated June 13, 1995, to support his argument that such positions were vacant during the time that he sought accommodation, the city's vacancy list was merely a printout that listed the name of available positions and a starting salary figure.  It did not show the department in which a position was available, nor did it mention the requirements for any such position.  Moreover, Karen Jones, who was the city's ADA coordinator in 1994 and 1995, testified that even though a position might appear on the vacancy list, it did not always indicate a true vacancy, because often the city department might not fill the position for budgetary reasons.  Likewise the evidence, which was attached to Pflanz's summary-judgment motion as Exhibit C, was insufficient to show that civilian positions were vacant during the time he sought accommodation.  At most, the evidence demonstrated that certain individuals held civilian positions within the Fire Division during 1994 and 1995.  Furthermore, Pflanz did not present any job descriptions for these positions, thus failing to detail what the essential functions of these positions were.  We have been unable to locate a job description for any of these positions.  Thus, Pflanz additionally did not demonstrate that he possessed the requisite qualifications to perform in these positions.  Consequently, Pflanz did not demonstrate that these positions were available as a reasonable accommodation.

{¶ 54}  Pflanz next argues that there were vacant positions in the Safety Department that were equivalent to his position as a firefighter and that the city did not offer one of them as a reasonable accommodation.  Pflanz contends that, under its own policy, the city was required to offer him an equivalent position first, if such a position existed.  He argues that the city's vacancy list revealed such vacant positions in the Telecommunications Division of the Safety Department.  Pflanz, however, failed to demonstrate that he was qualified for these positions.  Thus, no reasonable factfinder could have concluded that Pflanz's reassignment to one of these positions would have been a reasonable accommodation.

---

41.  See fn. 37, supra.

{¶ 55} Finally, Pflanz contends that reassignment to an equivalent position in the city's Health and Safety Department as a Health and Safety Specialist II would have been a reasonable accommodation. But Jones testified that such a position would have been a promotion. Disability law does not require an employer to promote an employee as a reasonable accommodation.[42] Moreover Pflanz did not present sufficient evidence to demonstrate that he was qualified for this position, and, thus, it was not a reasonable accommodation.

{¶ 56} Having reviewed all of the positions identified by Pflanz as possible means for the city to have reasonably accommodated his medical restrictions, we hold that Pflanz has failed to establish that a vacancy existed in many of these positions or that they were reasonable accommodations. Because Pflanz did not demonstrate that an equivalent position for which he was qualified was vacant, the city's offer of the police technician position was a reasonable accommodation.[43] Because Pflanz rejected the city's offer, he was not a qualified individual under the statute.[44] Consequently, the city was entitled to summary judgment on Pflanz's failure-to-accommodate claim. We, therefore, overrule the first assignment of error.

## Retaliatory–Discharge Claim

{¶ 57} In his second assignment of error, Pflanz argues that the trial court erred in granting summary judgment on his retaliatory-discharge claim. Pflanz asserts that he was medically separated because he had filed a charge of disability discrimination with the EEOC. Pflanz argues, among other things, that the temporal proximity between his charge and his separation created an inference of retaliatory discharge. We disagree.

{¶ 58} R.C. 4112.02(I) prohibits retaliation "against any other person because that person has opposed any unlawful discriminatory practice * * * or because that person has made a charge [of discrimination], testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." To establish a claim of retaliation under R.C. 4112.02(I), Pflanz had to show the following: (1) he engaged in a protected activity, (2) his employer knew of his participation in the protected activity, (3) he suffered an adverse employment action, and (4) a causal

---

42. See *Eckles v. Consol. Rail Corp.* (C.A.7, 1996), 94 F.3d 1041.

43. See *Smith v. Midland Brake* (C.A.10, 1999), 180 F.3d 1154, 1177.

44. See *Hankins v. The Gap, Inc.* (C.A.6, 1996), 84 F.3d 797, 800–801, citing Section 1630.9(d), Title 29, C.F.R.

link existed between the protected activity and the adverse action.[45] Absent other direct or compelling circumstantial evidence, temporal proximity alone is insufficient to support a finding of a causal connection.[46]

{¶ 59} The trial court held that summary judgment was appropriate because Pflanz could not establish the third and fourth elements of a prima facie case. In particular, the trial court stated that Pflanz could not prove that he had been subjected to an adverse employment action, because the city had attempted to accommodate his disability. The trial court further found that the record was "devoid of any 'causal link' between a protected activity of the plaintiff and an adverse action."

{¶ 60} Having reviewed the evidence most strongly in Pflanz's favor, we agree with the trial court's conclusion that Pflanz failed to demonstrate the necessary elements for a prima facie case of retaliation under R.C. 4112.02(I). Pflanz failed to demonstrate that the city knew that he had filed an EEOC charge before separating him from his employment. Although the record contains a copy of a notice of Pflanz's EEOC charge and a copy of a letter addressed to the city solicitor, both of which were dated June 22, 1995, there is no evidence in the record to show when the city solicitor's office received the letter and charge. Nor is there any evidence that the solicitor's office forwarded the charge to either the Safety Department or the Fire Division prior to management personnel making their decision to medically separate Pflanz.

{¶ 61} Pflanz also failed to present any evidence to show that his filing of the EEOC charge was the likely reason for his separation. Pflanz had been on notice for over a year that he was being medically separated for his back condition. During that time, the city had offered him a light-duty position in the Fire Division while the city looked for a position that would accommodate his medical restrictions. After offering Pflanz a position that would accommodate his medical restrictions, the city gave Pflanz three extensions of time and a meeting with the Safety Director to discuss his concerns about the position. It was only after Pflanz had failed to respond to the city's offer of employment as a police technician by the requested deadline that he was medically separated from his employment. The city's actions in attempting to accommodate Pflanz, even after he had filed his charge, further belie his argument that he was medically separated in retaliation for filing the EEOC charge. Because reasonable minds

---

45. See *Wille v. Hunkar Laboratories, Inc.* (1998), 132 Ohio App.3d 92, 107–108, 724 N.E.2d 492; *Hilliard v. Huntington Natl. Bank* (June 11, 1999), 1st Dist. No. C–980383, 1999 WL 386664.

46. See *Burchett v. E. Liverpool Dodge Chrysler Plymouth Jeep*, 7th Dist No. 2001CO16, 2002-Ohio-3045, 2002 WL 1376480; *Nguyen v. Cleveland* (C.A.6, 2000), 229 F.3d 559, 563.

could not conclude that the city discharged Pflanz in retaliation for his filing of the EEOC charge, we overrule the second assignment of error.

### Federal and State Retaliation Claims Relating to Hazard Poster

{¶ 62} In his third assignment of error, Pflanz contends that the trial court erred when it granted summary judgment to the city on his state and federal retaliation claims relating to a hazard poster that the city had published on or around July 1996. We disagree.

{¶ 63} The test for establishing a claim of retaliation under federal law is basically the same one that we applied to Pflanz's state retaliation claim. Consequently, we analyze Pflanz's state and federal retaliations claims together.

{¶ 64} To establish his retaliation claim under the ADA and R.C. 4112.02(I), Pflanz had to show that (1) he engaged in protected activity; (2) his employer knew about the protected activity; (3) the employer took an adverse action; and (4) there was a causal connection between the protected activity and the adverse action.[47] To show the requisite casual link, Pflanz had to present evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.[48] A "causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[49] But the mere fact that an adverse employment action occurs subsequent to the protected activity does not alone support an inference of retaliation.[50] If Pflanz established a prima facie case, the burden then shifted to the city to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[51]

{¶ 65} Neither party disputes that Pflanz was engaged in a protected activity when he filed a charge of disability discrimination with the EEOC in June 1995, or that the city knew he was engaged in that protected activity.[52] The parties do

---

47. See *Canitia v. Yellow Freight* (C.A.6, 1990), 903 F.2d 1064, 1066.

48. *Cohen v. Fred Meyer, Inc.* (C.A.9, 1982), 686 F.2d 793, 797.

49. *Wrenn v. Gould* (C.A.6, 1987), 808 F.2d 493, 501, quoting *Burrus v. United Tel. Co.* (C.A.10, 1982), 683 F.2d 339, 343.

50. See *Cooper v. N. Olmsted* (C.A.6, 1986), 795 F.2d 1265, 1272.

51. See *Cohen*, supra, at 796.

52. A memorandum written by Assistant Fire Chief William Worley in which he responded to the allegations in Pflanz's EEOC charge indicated that the city was aware of Pflanz's charge on July 24, 1995.

dispute, however, whether Pflanz established the third and fourth elements necessary for a prima facie case of retaliation.

{¶ 66} The trial court ruled that Pflanz had not established either element. With respect to the third element, the trial court held that the anti-retaliation provisions of the ADA and R.C. 4112.02(I) did not extend to adverse actions taken against former employees. The trial court reasoned that because Pflanz was no longer employed by the city when the hazard poster was published, he could not establish that he had been subjected to an adverse employment action. The trial court further found that Pflanz could not establish the fourth element of a prima facie case because he could not show a causal link between his EEOC charge and the hazard poster.

{¶ 67} Pflanz argues that there were genuine issues of material fact as to whether the city's publication of the hazard poster was an "adverse employment action." Relying on the United States Supreme Court's decision in *Robinson v. Shell Oil Co,*[53] along with this court's decision in *Hilliard v. Huntington Bank,*[54] Pflanz contends that, even though he was a former employee, he could still pursue an action for retaliatory discrimination under the ADA. Pflanz further contends that there were genuine issues of material fact concerning the existence of a causal connection between the publication of the hazard poster and his initial charge of discrimination because the EEOC's investigation of his charge was ongoing at the time the poster was published. The trial court concluded that this evidence alone was insufficient to create a causal connection. We agree.

{¶ 68} Timing alone is not sufficient to establish a causal connection,[55] especially in this case where there was a significant gap in time between the time that Pflanz filed his charge of discrimination and the time that the hazard poster was published. The mere fact that the EEOC's investigation was ongoing was not enough to establish a causal connection.[56] Even if we were to assume arguendo[57] that Pflanz had set forth a prima facie case of retaliation, his retaliation claims still failed because he did not demonstrate that the reason articulated by the city

---

53. (1997), 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808.

54. (June 11, 1999), 1st Dist. No. C–980383, 1999 WL 386664.

55. See *Jackson v. Pepsi–Cola, Dr. Pepper Bottling Co.* (C.A.6, 1986), 783 F.2d 50, 54, certiorari denied (1986), 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712.

56. Thus, we need not address Pflanz's argument that he, as a former employee, could pursue a retaliation claim under the ADA or R.C. 4112.02(I).

57. In doing so, we express no opinion on whether former employees such as Pflanz would be covered under the anti-retaliation provisions of the ADA or R.C. 4112.02(I).

for publishing and distributing the hazard poster was a mere pretext for discrimination.

{¶ 69} The city asserts that its decision to publish the hazard poster was not based on retaliation. The city contends that it distributed the hazard poster as a reasonable precaution to help secure the safety of the employees and management personnel in the Fire Division. Pflanz argues that the city's reason was pretextual because no one in the Fire Division truly believed that he was a threat. In support of his argument, Pflanz points to the fact that Assistant Fire Chief Worley, who was designated on the hazard poster as the individual to contact if there were questions concerning Pflanz, testified that he did not recall the events leading up to the poster or his involvement in the poster. We fail to see how this created a genuine issue of material fact, especially when there is evidence in the record that another assistant fire chief, Daniel Kuhn, and Chief Steidel took the lead in publishing and distributing the hazard poster.

{¶ 70} Pflanz also implies that because Worley claimed that he did not know about the hazard poster, he did not view Pflanz as a threat. Having reviewed Worley's testimony, we ·cannot agree with Pflanz's assertion. When asked whether he was "personally worried about Pflanz as a result of the posting," Worley replied:

{¶ 71} "Well, the one thing this says here that I concur with is if he [Police Officer Richardson] talked to me and I showed concern about what Mr. Pflanz might be capable of, that's absolutely correct. I would be worried about a person that's experienced in bombs and bomb technology. You would have to be insane not to be worried about it or concerned about what he's capable of. Did I think he would really do it? I'm not going to answer that."

{¶ 72} As for Pflanz's reliance on affidavits from three former co-workers, each stating that Pflanz was not a threat, this evidence was similarly insufficient to create a genuine issue of material fact, especially when Pflanz's e-mail threats were not leveled at co-workers, but at those in management positions.

{¶ 73} Similarly, Pflanz's reliance on a sentence in a memorandum from Chief Steidel to Betty Baker, Director of Personnel, dated August 2, 1996, in which Steidel stated that he did not live his life in fear of Pflanz, did not create a genuine issue of material fact. The memorandum, which was dated over a month after the hazard poster had been distributed, did not rebut the city's argument that Steidel and other management personnel viewed Pflanz's June e-mail as a threat to the Fire Division, nor did it evidence any retaliatory motive for the city's publication of the hazard poster. Furthermore, the fact that the Fire Division had published and distributed a hazard poster for only one other firefighter, who had a criminal record, similarly did not create an inference of discrimination. Pflanz argues that because he did not have a history of violence,

the city should have investigated the threats in his e-mail prior to its publication of the hazard poster, and that because it did not, the city's actions were retaliatory.

{¶ 74} Pflanz's argument fails for two reasons. First, we are not required to determine whether the city's decision to publish the poster without further investigation was a good or bad decision, because the legal provisions against retaliation are not violated by an exercise of erroneous or even illogical business judgment. "An employer's business judgment is relevant only insofar as it relates to the motivation of the employer with respect to the allegedly illegal conduct."[58] And, second, there is ample evidence in the record to show that the city's publication of the hazard poster was not retaliatory. Thus, the city was entitled to judgment as a matter of law on Pflanz's federal and state retaliation claims. Consequently, we overrule the third assignment of error.

## Public–Policy Claim

{¶ 75} In his fourth assignment of error, Pflanz argues that the trial court erred in dismissing his public-policy claim. Pflanz contends that the facts supporting his claims of failure to accommodate and retaliation also supported a finding of wrongful discharge in violation of public policy under Ohio law. We disagree.

{¶ 76} In order to succeed on his public policy claim, Pflanz had show the following:

{¶ 77} "(1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy of Ohio; (3) the plaintiff's dismissal was motivated by conduct related to the public policy, and (4) the employer lacked overriding legitimate business justification for the dismissal."[59]

{¶ 78} The trial court determined that Pflanz could not meet the "required burden" because he could not show that the city had "violated any aspect of public policy regarding its ultimate termination and contact" with him. We agree.

{¶ 79} Although Ohio public policy clearly prohibits discrimination against disabled individuals, Pflanz failed to demonstrate that he qualified as "disabled"

58. *Sanchez v. Philip Morris, Inc.* (C.A.10, 1993), 992 F.2d 244, 247.

59. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, quoting *Painter v. Graley* (1994), 70 Ohio St.3d 377, 384, 639 N.E.2d 51, fn. 8.

within the meaning of R.C. 4112.02. Thus, he could not show that he was a member of the class of persons who were the intended beneficiaries of R.C. 4112.02.[60] Furthermore, Pflanz did not present sufficient evidence to show that a reasonable trier of fact could have concluded that he was dismissed from his employment with the city in retaliation for his filing of an EEOC charge. Consequently, the city was also entitled to summary judgment on Pflanz's public-policy claim for wrongful discharge. We, therefore, overrule the fourth assignment of error.

## CONCLUSION

{¶ 80} For the foregoing reasons, we affirm the trial court's entry of summary judgment for the city of Cincinnati.

Judgment affirmed.

WINKLER, J., concurs.

PAINTER, P.J., concurs separately.

PAINTER, Presiding Judge, concurring.

{¶ 81} To succeed on his failure-to-accommodate claim, Pflanz had to prove three elements—that he was disabled, that his employer was aware of the disability, and that he could do his job with reasonable accommodation. I agree with the majority opinion that Pflanz failed to prove the third element when he failed to prove that an equivalent position for which he qualified was available. On that basis, and that basis alone, Pflanz's claim failed, and our analysis need not go further.

{¶ 82} The lead opinion unnecessarily discusses the first element of the test—whether Pflanz had a disability. We need not decide whether Pflanz had a disability, and therefore need not determine which activities Ohio law considers "major life activities." The majority's conclusion that "lifting" is not a major life activity is against all precedent they discuss, and the discussion is strained at best. We should leave this issue for another day.

{¶ 83} Because Pflanz's claim failed the third prong of the test, summary judgment was properly granted for the city on the failure-to-accommodate claim. I concur with the lead opinion's analysis and conclusions on the remaining assignments of error.

---

60. See *Plant v. Morton Internatl., Inc.* (C.A.6, 2000), 212 F.3d 929, 939–940.