DECISION.
{¶ 1} This case reminds us that workplace safety is no accident. Employees should do the dos and not the don'ts. Not following safety protocols is hazardous to one's health — and job security.
 {¶ 2} In this retaliatory-discharge case, plaintiff-appellant Dolar Cunningham had done the don'ts and not the dos. As a result, she was injured and then fired by defendant-appellee The Kroger Company.
 {¶ 3} Cunningham was injured when the forklift she was driving fell between a runaway truck and the loading dock. The truck had rolled away from the dock as Cunningham was backing out. Because of her injury, Cunningham filed a workers' compensation claim and was granted disability benefits. Kroger investigated the incident and fired Cunningham for twice violating its safety rules. Cunningham sued, alleging that Kroger had discharged her in retaliation for filing a workers' compensation claim. The trial court granted summary judgment in favor of Kroger, and Cunningham now appeals. But because Cunningham had not established a prima facie case of retaliatory discharge, we affirm the judgment.
 I. Cunningham's Employment and Training at Kroger {¶ 4} Kroger hired Cunningham in 1997. She worked as a forklift operator from 2000 until she was discharged in 2004. During her employment, Cunningham was a member of the Retail, Wholesale, and Department Store Union No. 390 and was subject to its collective-bargaining agreement.
 {¶ 5} As a Kroger forklift operator, Cunningham had been required to complete both computer-based and hands-on training before operating a forklift. Throughout Cunningham's employment, she had received numerous safety-related circulars outlining Kroger's rules and policies promoting safety in the workplace. Cunningham had also attended training sessions regarding proper forklift operation on Kroger's loading docks. Each day Cunningham attended startup safety meetings, and on the morning of the accident she had participated in a calibration-safety training process where Kroger employees observed each other and commented on the safety of their actions.
 {¶ 6} Kroger's loading docks were equipped with a Dok-Lok system. The Dok-Lok had been devised to lock trucks to docks during the loading and unloading process so that a truck or trailer did not pull away from the dock while being loaded. Cunningham admitted that it was generally the forklift operator's responsibility to engage the Dok-Lok and that she had likely received written manuals and other training materials from the manufacturer advising operators to physically inspect each truck to ensure that the Dok-Lok was properly engaged. Cunningham also testified that she was trained on how to properly use the Dok-Lok system.
 {¶ 7} In February 2004, Cunningham received a three-day suspension for backing into another forklift. The safety rules required that forklift drivers honk their horn before, and look over their shoulder while, backing up. The facts showed that Cunningham had neither honked her horn nor looked over her shoulder on that occasion. Cunningham received a disciplinary suspension for failing to follow the safety rules. And Kroger warned her that further safety-rule infractions could lead to termination.
 {¶ 8} About two months later, in April 2004, Cunningham was involved in another accident while operating her forklift. She was loading a truck, and as she entered the truck she felt a dip. She disregarded the dip and continued to drop off her cargo. As she was backing out of the truck, it suddenly began to roll away from the dock. The forklift, having been between the truck and the dock, fell to the ground with Cunningham inside.
 {¶ 9} Kroger suspended and then later discharged Cunningham.
 {¶ 10} Cunningham's union filed a grievance to determine whether Kroger had just cause to terminate Cunningham. The arbitrator found that, under the collective-bargaining agreement, Kroger's discharge was proper.
 {¶ 11} Cunningham had also filed for total temporary disability ("TTD") benefits with the Industrial Commission of Ohio. A district hearing officer granted the benefits claim, determining that the possible safety violation could not be considered a voluntary abandonment of employment. Kroger appealed to a staff hearing officer. On appeal Kroger argued that TTD benefits were inappropriate because Cunningham had violated a written work rule. The staff hearing officer rejected Kroger's argument and granted Cunningham's TTD motion because the injury was a workplace accident and was not intentional or self-inflicted.
 II. Retaliatory Discharge {¶ 12} Cunningham's complaint alleged that Kroger had retaliated against her because she had filed a workers' compensation claim. In Ohio, it is illegal for an employer to discharge an employee for instituting or pursuing a workers' compensation claim.[1] Cunningham's assignment of error argues that summary judgment in Kroger's favor was improper because there was an issue of fact concerning whether she had been discharged in retaliation for filing her workers' compensation claim.
 {¶ 13} On appeal, a grant of summary judgment is reviewed de novo.[2] Here Kroger was entitled to summary judgment if (1) there was no genuine issue of material fact; (2) it was entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of Cunningham, and that conclusion was adverse to her.[3]
 {¶ 14} The summary-judgment standard placed the burden on Kroger as the moving party to identify "those portions of the record that demonstrate[d] the absence of a genuine issue of material fact on the essential elements of [Cunningham's] claims."[4] Once the moving party discharges that burden, the nonmoving party then has "a reciprocal burden to set forth specific facts by the means listed in Civ.R. 56(E) to show that a triable issue of fact exists."[5]
 {¶ 15} Courts analyze retaliatory-discharge claims under a burden-shifting framework where the initial burden of proof is on the complainant. Thus, to succeed on her retaliatory-discharge claim, Cunningham first had to set forth a prima facie case by showing that (1) she was injured on the job, (2) she filed a workers' compensation claim, and (3) there was a causal connection between her filing of the workers' compensation claim and her termination.[6] If, and only if, Cunningham could establish a prima facie case would the burden have shifted to Kroger to expound a legitimate, non-retaliatory reason for terminating Cunningham.[7] If Kroger could articulate a legitimate reason, the burden would have shifted back to Cunningham to prove that the proffered reason was a pretext, and that she was retaliated against because she pursued workers' compensation benefits.[8] So we must evaluate whether Cunningham set forth evidence to prove a causal connection between her filing of the workers' compensation claim and her termination.
 III. Post Hoc Not Proper Hoc {¶ 16} In attempting to make her prima facie case, Cunningham argued that the timing of her firing raised an inference of retaliation. And that's all she wrote — both literally and idiomatically — to support her allegations. But temporal proximity alone does not show the required causal connection: "absent other direct or compelling circumstantial evidence, temporal proximity alone is insufficient to support a finding of a causal connection."[9] Cunningham failed to offer any additional evidence or facts tending to suggest that Kroger's basis for her discharge had been retaliatory. Moreover, our review of the record fails to reveal facts suggesting that Kroger had fired her for any reason other than her safety-rule violations. She failed to show that any "causal link existed between the protected activity and the adverse action."[10]
 {¶ 17} Cunningham argues that she was denied an inference of retaliation because the third element required her to prove the entire case before a prima facie showing could be made. She essentially argues that the prima facie showing is at odds with the normal burden-shifting framework in which a presumption or inference of discrimination or retaliation arises without the necessity for direct proof. In this respect, Cunningham relies onMcDonnell Douglas Corp. v. Green.[11] In McDonnellDouglas, an employee sued under Title VII, alleging that he had not been hired as an aircraft mechanic because of his race. The U.S. Supreme Court determined that the employee had made his prima facie case by showing that McDonnell Douglas (1) sought to hire mechanics and continued to do so after rejecting the prospective employee's application for reemployment, and (2) did not dispute the prospective employee's qualifications to do the job and acknowledged that the employee's past performance as a mechanic was satisfactory. Based on these facts, the Court was able to infer discriminatory intent on the part of the employer. Not so in this case.
 {¶ 18} Cunningham failed to present either direct or circumstantial evidence or facts from which the trial court could have inferred a retaliatory intent by Kroger.
 IV. Even if Prima Facie Shown {¶ 19} Even assuming that Cunningham had met her initial burden, we are convinced that the evidence showed that Kroger would have fired Cunningham regardless of her workers' compensation claim.[12] That is, Kroger's proffered reason for discharging Cunningham was not a pretext.
 {¶ 20} In support of its summary-judgment motion, Kroger offered evidence showing that it had conducted an extensive investigation of the accident — including an inspection of the equipment, reenactments, and a review of video footage. Based on that investigation, Kroger concluded that Cunningham had not engaged the Dok-Lok, had not visually checked to make sure the system was engaged, and had not asked her supervisor for assistance when she felt the dip in the truck. And Cunningham admitted as much at the arbitration hearing.
 {¶ 21} It is also undisputed that this was Cunningham's second safety violation in about two months. Under the collective-bargaining agreement, Cunningham's actions constituted a primary offense in violation of rule six (failure to observe safety rules or regulations) for which discipline up to and including termination was appropriate. Based on the investigation of the second accident, as well as her previous safety infractions, Kroger determined that Cunningham's safety violations warranted termination. We also note that an independent arbitrator found that Kroger had just cause to terminate Cunningham because of her safety-rule violations.
 V. Chalk and Cheese {¶ 22} Cunningham asserts that the arbitrator and the Industrial Commission hearing officer came to different conclusions on the issue of whether Kroger had just cause to terminate Cunningham and that that inconsistency created a triable issue of fact. But Cunningham's comparison is like chalk and cheese.
 {¶ 23} The issue at the arbitration was whether Kroger had just cause to terminate under the collective-bargaining agreement. The arbitrator thought so.
 {¶ 24} The issue before the Industrial Commission was whether Cunningham should receive TTD benefits. At that hearing, Kroger argued that Cunningham should not receive TTD benefits because her safety-rule violations were a voluntary abandonment of employment. The hearing officer rejected Kroger's argument as it related to TTD benefits and found that because Cunningham had not intentionally caused the injury, she was entitled to benefits. She was hurt on the job — she got workers' compensation benefits.
 VII. No Case {¶ 25} We hold that Cunningham failed to present a prima facie case because she did not produce evidence to support an inferable connection between her workers' compensation claim and Kroger's discharge. And even if Cunningham had presented a prima facie case, there was not a scintilla of evidence suggesting that Kroger's proffered reason for termination was a pretext. Finally, because Cunningham's underlying R.C. 4123.90 claim was meritless, her public-policy claim also failed; and we are not persuaded to extend the public-policy exceptions announced in Coolidge v.Riverdale Local School Dist.[13] and Bickers v. WesternSouthern Life Ins. Co.[14] to this case.
 {¶ 26} The trial court's judgment is accordingly affirmed.
Judgment affirmed.
Hendon and Winkler, JJ., concur.
Winkler, retired, from the First Appellate District, sitting by assignment.
[1] See R.C. 4123.90.
[2] See Hollingsworth v. Time Warner Cable,157 Ohio App.3d 539, 546, 2004-Ohio-3130, 812 N.E.2d 976, citing Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[3] See id., citing Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.
[4] See id., quoting Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264; see, also, Civ.R. 56(C).
[5] See id., quoting Morris v. Ohio Cas. Ins. Co. (1988),35 Ohio St.3d 45, 47, 517 N.E.2d 904.
[6] See Wilson v. Riverside Hosp. (1985), 18 Ohio St.3d 8,10, 479 N.E.2d 275; see, also, Boyd v. Winton Hills Med. Health Ctr., Inc. (1999), 133 Ohio App.3d 150, 154,727 N.E.2d 137; Smith v. Children's Aid Soc., 8th Dist. No. 86644,2006-Ohio-4754, at ¶ 52.
[7] See Boyd, supra, 133 Ohio App.3d at 154.
[8] See id.; see, also, Kilbarger v. Anchor Hocking Glass Co.
(1997), 120 Ohio App.3d 332, 337-338, 697 N.E.2d 1080.
[9] See Pflanz v. Cincinnati, 149 Ohio App.3d 743,2002-Ohio-5492, 778 N.E.2d 1073, at ¶ 47.
[10] See White v. Mt. Carmel Med. Ctr., 150 Ohio App.3d 316,2002-Ohio-6446, 780 N.E.2d 1054, at ¶ 36; see, also, Boyd,
supra, 133 Ohio App.3d at 154; Smith, supra.
[11] (1973), 411 U.S. 792, 93 S.Ct. 1817.
[12] Ohio Civ. Rights Comm. v. Cincinnati Bd. of Edn. (Oct. 30, 1985), 1st Dist. No. C-840149.
[13] 100 Ohio St.3d 141, 2003-Ohio-5357, 797 N.E.2d 61.
[14] 1st Dist. No. C-040342, 2006-Ohio-572.