[Cite as *Janezic v. Eaton Corp.*, 2013-Ohio-5436.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99897**

## JOHN S. JANEZIC

PLAINTIFF-APPELLANT

vs.

## EATON CORPORATION

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-759786

**BEFORE:** Kilbane, J., Boyle, P.J., and Keough, J.
**RELEASED AND JOURNALIZED:** December 12, 2013

**ATTORNEYS FOR APPELLANT**

Melisa M. Mazanec-Fisco
Chastity L. Christy
Caryn M. Groedel
Caryn Groedel & Associates
31340 Solon Road
Suite 27
Solon, Ohio 44139

**ATTORNEYS FOR APPELLEE**

Gregory C. Scheiderer
David A. Campbell
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114

MARY EILEEN KILBANE, J.:

**{¶1}** Plaintiff-appellant, John Janezic ("Janezic"), appeals the trial court's decision granting summary judgment in favor of defendant-appellee, Eaton Corporation ("Eaton"). For the reasons set forth below, we affirm.

**{¶2}** In July 2011, Janezic filed a complaint against Eaton, alleging the following four causes of action: (1) age discrimination; (2) reverse race discrimination; (3) violation of R.C. 4113.52 (Ohio's Whistleblower Statute); and (4) wrongful discharge in violation of public policy.[1] Janezic was employed by Eaton in 2007, after Eaton purchased Janezic's former employer, Argo-Tech Corporation. Janezic was employed as a Lead Engineer until his discharge in February 2009.

**{¶3}** He reported to supervisor Jeff Halter ("Halter") for five to ten years prior to his discharge. Janezic worked at an Eaton facility that designs and manufactures pumps and other aircraft components. After each pump is manufactured, it undergoes testing to ensure it meets the customers' requirements. Janezic only worked with the products that were already identified as potentially nonconforming. Janezic would evaluate those products and determine whether they were acceptable as is, unusable, or should be

---

[1]Janezic filed a previous complaint in August 2009, but voluntarily dismissed the matter without prejudice in March 2011.

reworked or repaired. He would complete the nonconformance report that had been generated for each product he reviewed and record his assessment of the product on the report.

{¶4} In April 2008, Janezic was called to a meeting in human resources after a coworker complained about a comment made by Janezic. Janezic and the complaining employee were in the same room when an African-American female employee walked by them. Janezic said that this female employee had an "Obama-style" haircut and "the haircut looks bad" on her. Janezic claimed that the comment was not "charged," and he only meant that the haircut did not look good on the female employee.

{¶5} In December 2008, Halter gave Janezic his yearly performance evaluation. The evaluation was divided into sections that were rated on a scale of 1 to 5, with 5 being the highest and 1 being the lowest. In the "Competencies" section, Janezic received a 3 for "drives for results" and "makes decisions/solves problems" categories. He received a 1 in the "Collaborative Style" section. In the "Manager's Assessment" section, Halter noted that

[Janezic] is driven to make sure that we ship good product from this facility.

* * *

[Janezic] had a reported issue earlier this year (April 2008) regarding the sensitivity of his comments to an hourly employee within the Assembly Area. [Janezic] needs to be very careful in what he says and how it comes across.

[Janezic] has been very harsh (degrading) with his words to Quality personnel during the year, [Janezic] needs to maintain a level of professionalism with other team members. APEX calibration input had substantiated this same behavior with Manufacturing.

**{¶6}** In February 2009, an argument arose between Janezic and his coworkers regarding the cleaning of nonconforming pumps. He confronted his coworkers for failing to follow his instructions in the cleaning of these pumps. He told his coworkers that they "screwed up his experiment" and "f**k you guys * * * I'll see you in personnel."

**{¶7}** Following this incident, Janezic had three meetings with management regarding his behavior. Janezic admitted that his behavior was "out of line." Eaton discharged Janezic at the conclusion of the third meeting on February 19, 2009. He was discharged for his inappropriate behavior and treatment of coworkers. Eaton did not hire a replacement for Janezic's position. Instead, his duties were assumed by four other employees with similar roles.

**{¶8}** In count one of his complaint, Janezic, who was 54 years old at the time of his discharge, alleges that Eaton replaced his position with a substantially younger

employee. In count two, he alleges that he was terminated, in part, because of his race. Janezic is Caucasian and claims that Eaton did not terminate the employment of a similarly-situated African-American coworker who engaged in the same conduct as Janezic. In count three, he alleges that he engaged in activity protected by the Whistleblower Statute when he notified his supervisors that Eaton employees were violating FAA safety regulations and Eaton's safety policies. He claims that he was discharged in retaliation for his whistleblowing activities. In count four, Janezic alleges Ohio's public policy encourages employees to prevent defective products from being released into the stream of commerce. He claims that Eaton's discharge of his employment jeopardizes the public policy of Ohio.

{¶9} In November 2012, Eaton filed a motion for summary judgment, arguing that there is no genuine issue of material fact and Janezic's claims fail as a matter of law. Eaton argued that Janezic had no direct evidence of discrimination, his position was not replaced, and Janezic cannot identify any similarly-situated Eaton employee who engaged in the same conduct, but was not discharged. Janezic opposed, arguing that he established all four of his claims. The trial court granted Eaton's motion for summary judgment, finding that Janezic failed to: (1) demonstrate a prima facie case for his age and reverse race discrimination claims; (2) offer evidence that he followed the specific

procedures provided by the Whistleblower Statute; and (3) identify an independent source to support his wrongful discharge in violation of public policy claim.

{¶10} It is from this order that Janezic appeals, raising the following three assignments of error for review, which shall be discussed together where appropriate.

### Assignment of Error One

The trial court erred and abused its discretion in denying [Janezic's] motion to compel discovery from [Eaton].

### Assignment of Error Two

The trial court erred in granting summary judgment in favor of [Eaton] as to Janezic's age and reverse discrimination claims.

### Assignment of Error Three

The trial court erred in granting summary judgment in favor of [Eaton] as to Janezic's whistleblower and public policy claims.

### Motion to Compel

{¶11} In the first assignment of error, Janezic argues that the trial court abused its discretion when it denied his motion to compel discovery from Eaton. "We review the denial of a motion to compel discovery for an abuse of discretion. *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198." *Nemcek v. N.E. Ohio Regional Sewer Dist.*, 8th Dist. Cuyahoga No. 98431, 2012-Ohio-5516, ¶ 7. "The

term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶12} "'Ohio has a liberal discovery policy which, subject to privilege, enables opposing parties to obtain from each other all evidence that is material, relevant and competent, notwithstanding its admissibility at trial.'" *Nemcek* at ¶ 8, quoting *Fletcher v. Nationwide Mut. Ins. Co.*, 2d Dist. Darke No. 02CA1599, 2003-Ohio-3038, ¶ 14, citing Civ.R. 26(B)(1). While discovery should be liberally allowed, a trial court is vested with broad discretion in discovery matters. *Roe v. Planned Parenthood S.W. Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 82. Notwithstanding Ohio's liberal discovery provisions, a trial court is vested with the authority to limit pretrial discovery in order to prevent an abuse of the discovery process. *Arnold v. Am. Natl. Red Cross*, 93 Ohio App.3d 564, 575, 639 N.E.2d 484 (8th Dist.1994), citing *Doe v. Univ. of Cincinnati*, 42 Ohio App.3d 227, 231, 538 N.E.2d 419 (10th Dist.1988).

{¶13} In his motion to compel, Janezic sought to compel Eaton to provide answers and responses to his first set of discovery requests. His discovery requests sought information regarding defective aircraft parts and safety issues raised by Janezic during

his last 14 months of employment, as well as Eaton's disciplinary policies and actions taken against Janezic's coworkers related to workplace behavior and swearing at work. Janezic claims that this information would have supported his testimony that substantially younger coworkers engaged in similar behavior, but were not terminated.

{¶14} After reviewing the record, we cannot conclude that the trial court abused its discretion. Eaton and Janezic were in steady communication regarding their discovery responses from the time Janezic served his complaint and discovery requests in July 2011 to April 2012. On April 12, 2012, Eaton provided Janezic with supplemental discovery responses and a letter stating that it considered "the enclosed production and supplemental responses, in addition to the documents and responses produced on the three prior occasions, to completely satisfy [Janezic's] discovery requests." Janezic then filed his motion to compel on May 4, 2012, and Eaton opposed on May 18, 2012. Janezic's deposition was taken on June 8, 2012.

{¶15} Based on Janezic's deposition, Eaton requested further briefing. On June 27, 2012, Eaton filed its supplemental opposition to Janezic's motion to compel and filed the entire transcript of Janezic's deposition. On July 6, 2012, Janezic filed his supplemental reply to Eaton's motion. The trial court denied Janezic's motion to compel

on August 1, 2012. Janezic filed a motion to reconsider, which the trial court denied. The trial court found that Janezic

> has presented no facts or case law to demonstrate that the court's original decision was flawed. * * * [Janezic's] motion for reconsideration of this honorable court's judgment denying [his] motion to compel * * * is denied.

{¶16} Janezic's deposition testimony demonstrated that he did not experience any discriminatory comments during his employment with Eaton and the two employees he alleges as similarly-situated to him are, in fact, not. His testimony further demonstrated that he did not engage in protected activity because Eaton withheld the pumps from shipment that he identified as problematic. Civ.R. 26(B)(1) provides that, in general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" Here, Janezic sought discovery that has no relevance to his claims. As a result, the trial court did not abuse its discretion when it denied his motion to compel.

{¶17} Accordingly, the first assignment of error is overruled.

### Motion for Summary Judgment

{¶18} In the second and third assignments of error, Janezic argues the trial court erred when it granted summary judgment on his age, reverse discrimination, whistleblower, and public policy claims.

{¶19} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264, 273-274.

{¶20} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of

the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

<u>Age and Reverse Race Discrimination Claims</u>

{¶21} Janezic argues that he has established his age and reverse race discrimination claims. The Ohio Supreme Court has held that to establish a prima facie case of discrimination, the plaintiff must demonstrate that they: (1) were a member of a statutorily-protected class; (2) suffered an adverse employment action (3) were qualified for the position; and (4) were replaced by a person who is not a member of the protected class or that similarly situated, non-protected employees were treated more favorably. *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983).[2] "Similarly situated" employees are those who "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Valentine v. Westshore Primary Care Assoc.*, 8th Dist. Cuyahoga No. 89999, 2008-Ohio-4450, ¶ 89, quoting *Atkinson v. Akron Bd. of Edn.*, 9th

---

[2]"This test is a descendant of *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, in which the United States Supreme Court promulgated an analytical framework for claims of race discrimination." *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 9.

Dist. Summit No. 22805, 2006-Ohio-1032, ¶ 28, citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992).

{¶22} In the instant case, there is no dispute as to the first three elements: Janezic was over age 40; Eaton terminated Janezic's employment; and he was qualified for the job. The parties dispute the final element of the test: whether Janezic was replaced by a person not belonging to the protected class or that similarly situated, non-protected employees were treated more favorably. We find that Janezic did not raise a genuine issue of material fact as to this element.

{¶23} A review of the record reveals that Janezic was not replaced by any employee. Rather, his duties were assumed by four engineers with similar roles. The assumption of duties does not constitute replacement. *Valentine* at ¶ 86, citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335-336 (6th Cir.2003).

> A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties * * *. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."

*Id.*, quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990). *See also Valentine* at ¶ 86.

{¶24} Therefore, Janezic is required to show that similarly situated, non-protected employees were treated more favorably. Janezic alleges that Gregory Drew and Paul

Harty are two younger employees who engaged in conduct similar to that for which he was terminated. However, Janezic testified that neither younger employee worked in his department. Moreover, they held different positions and had different supervisors. The record also demonstrates that no other employees in Janezic's division with the same supervisor engaged in the same behavior as Janezic.

{¶25} As we stated in *Valentine*,

[t]he law is clear that in order for this element to be successfully established, the parties to be compared must be similarly-situated in all respects; that is, they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citations omitted.)

*Id.* at ¶ 89. Thus, based on the foregoing, we find that Janezic did not establish a genuine issue of material fact as to the fourth element of his age discrimination claim.

{¶26} To set forth a prima facie case of reverse race discrimination, Janezic must demonstrate: (1) background circumstances supporting the inference that Eaton was the unusual employer who discriminated against non-minority employees; (2) he was discharged (or that the employer took an action adverse to the plaintiff's employment); (3) he was qualified for the position; and (4) he was treated disparately from

similarly-situated minority employees. *Courie v. ALCOA*, 162 Ohio App.3d 133, 2005-Ohio-3483, 832 N.E.2d 1230, ¶ 20 (8th Dist.).

**{¶27}** In the instant case, Janezic has failed to demonstrate a prima facie case of reverse race discrimination. During his deposition, Janezic admitted that he had no race-related issues with his supervisors. He never experienced or heard of any derogatory comments about him being Caucasian. Moreover, as discussed above, Janezic failed to demonstrate that he was treated differently from similarly-situated minority employees. For these reasons, the trial court properly granted summary judgment on Janezic's claim of reverse race discrimination.

Whistleblower and Public Policy Claims

**{¶28}** In the third assignment of error, Janezic argues the trial court erred when it granted summary judgment on his whistleblower and wrongful discharge in violation of public policy claims. He claims that as a result of his repeated refusal to authorize shipment of defective aircraft parts and reporting Eaton's violation of laws regarding the manufacturing of aircraft parts, Eaton terminated his employment.

**{¶29}** The Whistleblower Statute, R.C. 4113.52, protects employees from retaliation for notifying the proper authorities of illegal, dangerous conditions that the employer allows to exist. R.C. 4113.52(A)(1)(a) provides:

If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer * * *, or with any other appropriate public

official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

**{¶30}** In *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 248, 652 N.E.2d 940 (1995), the Ohio Supreme Court examined the Whistleblower Statute and stated that R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities only if the following requirements have first been satisfied:  (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation.

**{¶31}** The court held that

[i]n order for an employee to be afforded protection as a "whistleblower," such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute.

*Contreras* at the syllabus; *see also Smith v. Children's Aid Soc.*, 8th Dist. Cuyahoga No. 86644, 2006-Ohio-4754.

**{¶32}** Here, Janezic alleges that an email in which he requested to meet with Halter for 30 minutes to discuss acceptable practices on the production floor fulfills the

"written notice requirement."   In response to this email, Janezic met with Halter and the Head of Quality to discuss his concerns.   They told Janezic that they would look into what he presented.   Afterwards, Janezic made no further complaints.   However, Janezic's email does not identify and describe a violation as required by the statute. Furthermore, there is no evidence in the record that he made any further complaints after his meeting to anyone at Eaton or an outside authority such as the FAA.   Because Janezic failed to "strictly comply" with the requirements of the statute, he is not entitled to the protections afforded by the Whistleblower Statute.   Therefore, the trial court properly granted Eaton's motion for summary judgment on this claim.

{¶33} In order to support Janezic's wrongful discharge in violation of the public policy claim, Janezic must demonstrate:   (1) the existence of a clear public policy sufficient to justify an exception to the employment-at-will doctrine that is manifested in a state or federal constitution, statute, administrative regulation, or common law (the "clarity" element); (2) that the dismissal of employees under circumstances like those involved in his dismissal would jeopardize the public policy (the "jeopardy" element); (3) that his dismissal was motivated by conduct related to the public policy (the "causation" element); and (4) Eaton lacked overriding legitimate business justification for the

dismissal (the "overriding justification" element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 1995-Ohio-135, 652 N.E.2d 653.

**{¶34}** Janezic argues that he can bring his wrongful discharge in violation of public policy claim based on our decision in *Zajc v. Hycomp*, 172 Ohio App.3d 117, 2007-Ohio-2637, 873 N.E.2d 337 (8th Dist.). He claims that "when an employee is terminated for refusing to ship defective aircraft parts, that employee may maintain a claim for wrongful discharge in violation of public policy."

**{¶35}** In *Zajc*, the plaintiff ("Zajc") brought a wrongful discharge action against his former employer, Hycomp. Zajc began working for Hycomp as a manufacturing engineer. In his final capacity, he had the ultimate authority to determine whether parts met customer requirements, although a source inspector could override that determination. After Zajc determined that a particular part was not satisfactory, his supervisors confronted him and demanded that the part be sent to the customer. When he refused to do so, he was terminated from employment, and he filed suit against Hycomp. The trial court granted summary judgment to Hycomp, finding that

> the UCC and the Ohio Products Liability Act did not set forth a basis for meeting the clarity element of the claim for relief. [The court] further held that the jeopardy element of the claim for relief was not met because "if a product injures someone, then he or she may bring a lawsuit to address the injury," and if GE deemed the products nonconforming under the UCC,

then GE can "follow the steps in the UCC and return the goods to Hycomp."

*Id.* at ¶ 14.

**{¶36}** On appeal, we disagreed with the summary judgment ruling, finding that Zajc

> established the existence of a clear public policy sufficient to justify an exception to the employment-at-will doctrine. The UCC provisions permit a buyer to reject products which are nonconforming, the Products Liability Statute imposes strict liability where the risks exceed the benefits of a design, R.C. 2307.75, R.C. 2307.76; cf. *Bowling v. Heil* (1987), 31 Ohio St.3d 277, 31 Ohio B. 559, 511 N.E.2d 373, and perhaps most significantly, Chapter 447 of 49 U.S.C. authorizes the FAA to regulate the production of aircraft, perform inspections and sets forth standards. Chapter 221 of 14 C.F.R. provides that a production inspection system must be in place to determine, inter alia, that subcontracted parts must be as specified in the design data, that parts are be inspected, and that inspection records are maintained. Moreover, Hycomp admits that quality policy and procedures must be "audited yearly in accordance with the requirements recognized in the aerospace industry."

*Id.* at ¶ 25. Janezic argues that his employment, discharge, and public policy claims are almost identical to *Zajc*. We disagree.

**{¶37}** Our decision in *Zajc* is distinguishable from the instant case. Zajc was discharged for refusing to ship a defective aircraft part after his supervisors ordered him to do so. Here, Janezic testified that Eaton followed his instructions and did not ship the defective product in question. Furthermore, Janezic did not complain to the FAA or to

any other outside authority about the safety concerns with Eaton's products.   Therefore, the trial court properly granted Eaton's motion for summary judgment on this claim.

**{¶38}** Accordingly, the first, second, and third assignments of error are overruled.

**{¶39}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR