DECISION. *Page 2 
{¶ 1} Plaintiff-appellant Michael Clark sued defendant-appellee The Christ Hospital ("TCH") after he lost his job. Clark alleged that he was fired in retaliation for making repeated complaints about patient safety. He also claimed tortious interference with an employment relationship and sex discrimination.[1] TCH moved for summary judgment, arguing that Clark was terminated for performance deficiencies. The trial court granted summary judgment to TCH. We affirm.
 I. Clark's Service at Christ Hospital {¶ 2} Clark is a registered nurse. In August 2002, at the time of his dismissal from TCH, Clark was employed by Tri-State Medical Professions, LLC ("Tri-State"). Tri-State is an employment agency that had a contract to supply nursing staff to the Health Alliance of Greater Cincinnati ("Health Alliance"), a partnership of hospitals that includes TCH. Clark had been working at TCH for one year when Deborah Hayes, his supervisor at the hospital, called Tri-State and requested that Clark no longer be assigned to work at TCH. As a result, Clark claimed, Tri-State was unable to assign him to any other hospital in the Health Alliance network, and, thus, his relationship with Tri-State was terminated.
 {¶ 3} TCH cited several incidents that in combination led to its decision to no longer allow Clark to work at the hospital.
 {¶ 4} At her deposition, Hayes testified that she had received several complaints from charge nurses that Clark was rude and argumentative when he was *Page 3 
told that his shift had been cancelled. Clark admitted that he had displayed "frustration" over cancelled shifts. Hayes also testified that she had received a written complaint from TCH's Patient Relations Department that a patient's wife had complained about Clark's behavior. The wife was upset that the nursing staff had not responded quickly to the patient's repeated requests for something to drink. After Clark had brought the drink, the wife called Clark a derogatory name when he was thought to be out of earshot. He was not. Clark confronted the wife, who then filed a complaint with the hospital. Clark was reprimanded and told not to respond to provocations.
 {¶ 5} Another written complaint was filed by a doctor who stated that Clark had failed to timely prepare and transport a patient to the operating room, which had caused a delay in surgery. Hayes said that it was unclear whether this was simply a miscommunication, but nevertheless Clark was given a warning.
 {¶ 6} Finally, Clark initiated an argument with a charge nurse and called her a "bitch." Clark testified at his deposition that he had said the word in a kidding tone, but that the other nurse did not see it that way. She swore back at him. Clark finally walked away. Hayes said that Clark had initiated this encounter and that he had used inappropriate on-the-job language.
 {¶ 7} All of these incidents occurred within six to eight weeks prior to Clark's dismissal. Clark did not dispute that any of these incidents had occurred.
 {¶ 8} At his deposition, Clark testified that he had made reports to three different supervisors at TCH, including Hayes, regarding his concern over patient safety. But none of these complaints were in writing. When Clark was asked what evidence he had that his termination was caused by his complaints concerning *Page 4 
patient safety, Clark responded, "The only evidence is that I — is my own thought, is that I created issues and paperwork for the supervising nurses * * *." Clark then said that one of his previous supervisors, Ann Sampson, had told him that he was creating too much paperwork for her. But he also said that he did not believe that Sampson wanted to terminate him because of any additional paperwork.
 {¶ 9} Clark also testified that he had expressed concern to Hayes about the competency of some other nurses. But, again, when asked what evidence he had that demonstrated that Hayes would "desire to retaliate against [Clark] for raising competency issues," Clark responded, "[W]hat evidence? I have no evidence. I have only how I felt."
 {¶ 10} Hayes testified that she did not remember having any specific conversation with Clark about his concerns over patient safety, but that he possibly could have expressed concern about other nurses.
 {¶ 11} On appeal, Clark now brings forth a single assignment of error contending that the trial court erred in granting summary judgment to TCH.
 II. Summary-Judgment Standard {¶ 12} We review summary-judgment determinations de novo, without deference to the trial court.[2] Summary judgment should be granted only when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds, when viewing the evidence in the light most favorable to the nonmoving party, can only come to a conclusion adverse to the nonmoving party.[3] A party moving for summary judgment *Page 5 
bears the initial burden of showing that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial.[4] The nonmoving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts.[5]
 III. Wrongful-Termination Claim {¶ 13} Clark maintains that TCH unlawfully terminated his services for reporting his concerns about patient safety, not for the reasons it cites. Specifically, Clark maintains that there is a factual dispute regarding why he was terminated.
 {¶ 14} In the absence of an employment contract, employees work on an at-will basis. This means that the employee or the employer may terminate the employment relationship for any reason that is not contrary to law.[6] Clark brought his wrongful-termination claim underGreeley v. Miami Valley Maintenance Contrs., Inc.,[7] which created a cause of action for wrongful discharge in violation of public policy. InGreeley, the Ohio Supreme Court held that an employer's right to terminate an at-will employee does not "include the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy."[8] Clear public policy can also "be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."[9] *Page 6 
 {¶ 15} The elements of the tort of wrongful discharge in violation of public policy ("Greeley claim") are "1. That clear public policy existed and was manifested in a state or federal constitution, statute[,] or administrative regulation, or in the common law (the clarity element). 2. That dismissing employees under circumstances like those involved in the plaintiffs dismissal would jeopardize the public policy (thejeopardy element). 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element). 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)."[10]
 {¶ 16} In this case, there was a clear public policy that protected nurses from retaliation for reporting concerns over patient safety.[11] But Clark failed to provide any evidence beyond the mere allegations in his pleading that his termination stemmed even in part from his alleged safety complaints. At his deposition, he testified that he had no evidence to support his allegation that he was terminated because of his complaints over patient care. Further, he admitted that two of his supervisors, Hayes and Sampson, would not have wanted to terminate his services because he had expressed concern over the quality of care that TCH's patients were receiving. Accordingly, Clark did not satisfy the third prong of a Greeley claim.
 {¶ 17} Clark also failed to satisfy the fourth prong. TCH offered evidence of an overriding business justification for Clark's termination. And Clark did not produce evidence that TCH had completely lacked such justification. There was no factual dispute that the incidents cited by TCH leading to Clark's termination had actually occurred. Accordingly, Clark could not maintain a Greeley claim. *Page 7 
 {¶ 18} The trial court held that Clark could not maintain a claim under Greeley because he was not an at-will employee. We do not discuss that issue here because even if the court was wrong about his at-will status, we have already held that he could not maintain aGreeley claim. Accordingly, we uphold the trial court's grant of summary judgment on this claim.
 IV. Tortious Interference with Business Relationship {¶ 19} Clark alleged in his complaint that, as proximate result of TCH terminating his services, Tri-State had cut his work hours, and he was barred from performing nursing services at TCH and other hospitals in the Health Alliance network.
 {¶ 20} The elements of the tort of tortious interference with a business relationship are (1) a contractual or business relationship; (2) knowledge of the relationship by the tortfeasor; (3) an intentional and improper act by the tortfeasor terminating a business relationship; (4) lack of privilege on the part of the tortfeasor; and (5) resulting damages.[12] In addition, the wrongdoer must act maliciously before there may be recovery.[13] And "[e]ven if an actor's interference with another's [business relationship] causes damages to be suffered, that interference does not constitute a tort if the interference is justified."[14]
 {¶ 21} Clark essentially argues that TCH improperly terminated his nursing services and that this caused the breakdown of his business relationship with Tri-State. But Clark did not present any evidence that TCH had intentionally, maliciously, and improperly acted to end Clark's business relationship with Tri-State. *Page 8 
The evidence in the record shows only that TCH terminated Clark's nursing services at its facility for legitimate and nondiscriminatory reasons.
 {¶ 22} Accordingly, we uphold the grant of summary judgment on this claim.
 VI. Clark's Sexual-Discrimination Claim {¶ 23} R.C. 4112.02(A) prohibits any employer from discharging a person because of their sex and without just cause. A plaintiff may establish a prima facie case of sex discrimination by proving that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position he lost; and (4) either he was replaced by someone outside the protected class, or a "comparable non-protected person was treated better."[15]
 {¶ 24} "To prove that a comparable non-protected person was treated better," the plaintiff "must show that the `comparable' [was] similarly-situated in all respects."[16] The "respects" in which the "comparable" must be "similarly-situated" depend on "the factual context in which the * * * case arose * * * ."[17]
 {¶ 25} Here, Clark claimed that "[d]uring the time of his employment at The Christ Hospital * * * [he] was treated differently than similarly situated females." Specifically, he claimed that if it had been a female nurse who had used the word "bitch," "[he] just [knew] in his heart that [TCH's] response would have been different." In other words, the female nurse would not have been discharged.
 {¶ 26} Because Clark alleged discrimination as a result of the disciplinary action leading to the termination of his employment, the individual with whom he sought to compare his treatment "must have dealt with the same supervisor, have *Page 9 
been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[18]
 {¶ 27} Upon review of the record, it is clear that Clark presented no evidence that the nurse he called a "bitch," who responded adversely and yet kept her job, was similarly situated. The female nurse involved in this incident was supervised by Hayes, and Hayes testified that she had been reprimanded for using inappropriate language; but Hayes also noted that the nurse had not initiated the confrontation. Further, Clark presented no evidence that this nurse had a similar pattern of reprimands comparable to his own record.
 {¶ 28} Because Clark failed to present evidence that a similarly situated female was treated better than he was, and because TCH presented undisputed evidence concerning why Clark's services were terminated, we uphold the grant of summary judgment on this claim.
 {¶ 29} Because we have held that the trial court properly granted summary judgment to TCH on all of Clark's claims, his single assignment of error is overruled, and the trial court's judgment is affirmed.
Judgment affirmed.
HENDON and CUNNINGHAM, JJ., concur.
[1] R.C. 4112.02(A).
[2] See Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186,738 N.E.2d 1243.
[3] Civ.R. 56(C); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267.
[4] See Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[5] Id.
[6] Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100,483 N.E.2d 150.
[7] (1990), 49 Ohio St.3d 228, 551 N.E.2d 981.
[8] Id. at paragraph two of the syllabus.
[9] Painter v. Graley, 70 Ohio St.3d 377, 1994-Ohio-334,639 N.E.2d 51, paragraph three of the syllabus.
[10] Id. at 384 (emphasis in the original).
[11] See R.C. 4723.33.
[12] Brookside Ambulance, Inc. v. Walker Ambulance Serv. (1996),112 Ohio App.3d 150, 155-56, 678 N.E.2d 248.
[13] Id., citing Tripp v. Beverly Enterprises-Ohio, Inc., 9th Dist. No. 21506, 2003-Ohio-6821, ¶ 48.
[14] Fred Siegel Co., L.PA. v. Arter Hadden, 85 Ohio St.3d 171, 176,1999-Ohio-260, 707 N.E.2d 853.
[15] Bucher v. Sibcy Cline, Inc. (2000), 137 Ohio App.3d 230, 240,738 N.E.2d 435.
[16] Id. at 241, citing Mitchell v. Toledo Hosp. (C.A.6, 1992), 964 F.2d 577, 582.
[17] Id., citing Ercegovich v. Goodyear Tire Rubber Co. (C.A.6, 1998), 154 F.3d 344, 352.
[18] Id. *Page 1