DECISION.
{¶ 1} Plaintiff-appellant, Edward L. Greene, filed a complaint against defendants-appellees, the city of Cincinnati, Dale Bley, Stephen Kramer, and Jeffrey Butler, alleging causes of action for racial discrimination and retaliatory discharge under both federal and Ohio law, civil conspiracy, and publicity of a private fact. The trial court granted summary judgment in favor of all the defendants on all of Greene's claims. This appeal followed. We find no merit in Greene's four assignments of error, and we affirm the trial court's judgment.
 I. Facts and Procedure {¶ 2} The record shows that the city hired Greene, an African-American, as a police officer in 1993. He was assigned to various districts and was promoted to the position of sergeant in 1999. He was transferred several times during his career and spent his last years in the telephone crime-reporting unit. The city terminated his employment in November 2005. Greene filed a grievance, and an arbitrator upheld his dismissal.
 {¶ 3} From the beginning of his employment with the city, Greene had numerous documented problems. His supervisors, both Caucasian and African-American, raised numerous concerns about his performance. They questioned his judgment, his ego, his patience, and his impulse control.
 {¶ 4} Greene contended that his problems began in November 1996 when he objected because two white police officers had repeatedly called a black prisoner a "nigger." He claimed that he was subjected to harassment after he complained. Kramer was the acting district commander at that time. Greene filed a complaint with the *Page 3 
United States Equal Opportunity Commission ("EEOC") against Kramer based on his alleged mishandling of the harassment.
 {¶ 5} In January 2001, Greene changed shifts, and Bley became his supervisor. Greene had several clashes with Bley and eventually filed an EEOC complaint against him.
 {¶ 6} In May 2001, David Lewis, a private citizen, submitted a Freedom of Information Act request for Greene's personnel records. Greene's personnel file contained notes relating to his mental capacity to perform as a police officer. Lewis posted information from Green's file, as well as information from other police officers' files, on his website. Greene claimed that Bley and Lewis were friends, which Bley denied, and that Bley or Kramer had provided Lewis with the records.
 {¶ 7} Subsequently, Greene was working an off-duty detail when he called a radio show to talk with Lewis, whom his supervisors had instructed him to avoid. He questioned Lewis about why he had posted his personnel file on the website. Greene contended that Lewis went by various names and that he did not know that it was Lewis on the show.
 {¶ 8} Later, Greene was driving home in full uniform. He followed a driver who had swerved in front of him to the driver's home, even though he was out of his jurisdiction. The driver allowed Greene to use his cellular phone to call the police from that jurisdiction. Greene held the driver at gunpoint and handcuffed him while he waited for the police to arrive.
 {¶ 9} Kramer, who was then the investigative commander for the district, received orders to investigate these two incidents. As a result, the city brought *Page 4 
disciplinary charges against Greene. Following a hearing, Greene received a written reprimand.
 {¶ 10} Greene was later involved in two more incidents that prompted an investigation. In the first, Greene arrived on the scene of a crime and found a man who had been "hog-tied." Rather than untying him or taking him into custody, Greene took photographs of others posing with the man as if he were a trophy. Later that same day, Greene and other police officers were involved in an automobile chase with an armed suspect. When the officers apprehended the suspect, Greene pointed his gun directly at his fellow officers in violation of department policy. As a result of the investigation, the city suspended Greene's police powers and transferred him to the telephone crime-reporting unit ("TCRU").
 {¶ 11} Butler became Greene's supervisor at the TCRU. He had had a previous encounter with Greene. Butler had been in charge of supervising random drug testing. Greene, as the supervising officer on the shift, had failed to advise officers that they had to submit to testing. Butler documented the incident, which later resulted in disciplinary charges against Greene. He received a written reprimand, which a disciplinary committee later overturned.
 {¶ 12} The relationship between Greene and Butler was strained from the beginning. Unlike the relaxed style of Greene's previous supervisor, Butler had a more "hands on" management style. According to Greene, Butler was biased against him from the beginning. He claimed that Butler treated him unprofessionally, filed false charges against him, and subjected him to unwarranted discipline. The city refused Greene's requests for a transfer. Greene filed several EEOC complaints against Butler. *Page 5 
 {¶ 13} According to the city, Greene's performance problems continued and led to the filing of numerous charges. They included being absent without leave, insubordination, disrespectful conduct toward a superior officer, failure to properly supervise his subordinates, and failure to follow orders and directives. Greene demonstrated a consistent pattern of disrespect for his supervisor and failed to follow Butler's directives, essentially making up his own rules.
 {¶ 14} Eventually, the city decided to terminate Greene's employment. Greene filed a grievance under the city's collective-bargaining agreement with the police union. Following a hearing, an arbitrator found that Greene had been discharged for just cause.
 II. Discrimination {¶ 15} In his first, second, and third assignments of error, Greene contends that the trial court erred in granting summary judgment in favor of all the defendants on his discrimination claims under federal and Ohio law. He argues that he presented a prima facie case, and that genuine issues of material fact existed for trial. We find no merit in these arguments.
 {¶ 16} We analyze both the federal claims under Section 1983, Title 42, U.S. Code and the state claim under R.C. 4112.02 using the analytical framework set out in McDonnell Douglas Corp. v. Green.[1] First, the plaintiff bears the burden to present a prima facie case.[2] It is a burden of production, not a burden of proof[3] Nevertheless, the burden of persuasion remains at all times on the plaintiff.[4] *Page 6 
 {¶ 17} To establish a prima facie case, the plaintiff must show by a preponderance of the evidence (1) that he belongs to a racial minority; (2) that he was qualified for his position; (3) that he suffered an adverse employment action or was discharged; and (4) that he was treated disparately from similarly situated nonminority employees.[5] The city concedes that Greene presented evidence on the first three elements of his prima facie case. It argues that he failed to make the required showing on the fourth element.
 {¶ 18} Under the fourth element, the plaintiff must present evidence to show either that he was replaced by someone outside the protected class or that a "comparable non-protected person was treated better."[6] Although the plaintiff need not show an exact correlation, the comparable employee must be similarly situated in all relevant aspects.[7] Some factors a court should consider are whether the comparable employees have the same supervisor, have been subject to the same standards, have engaged in the same conduct, and have mitigating or distinguishing factors.[8]
 {¶ 19} In an affidavit supporting his motion for summary judgment, Greene cited no examples of comparable employees who were similarly situated. He only stated generally that white employees were treated more favorably. In his deposition, he cited some examples of white employees who he believed had been treated more favorably. But he provided few details about those employees, and the record does demonstrate *Page 7 
that they were similarly situated in all respects. Further, he acknowledged that their situations were not similar.
 {¶ 20} Consequently, Greene failed to meet his burden to produce evidence showing that similarly situated nonprotected employees were treated more favorably. Therefore, he failed to meet his burden to present a prima facie case of discrimination, and the trial court did not err in granting summary judgment to all defendants on his discrimination claims.
 III. Retaliatory Discharge {¶ 21} In his first three assignments of error, Greene also contends that the trial court erred in granting summary judgment for all the defendants on his retaliatory-discharge claims. Again, he contends that he presented a prima facie case and that genuine issues of material fact existed for trial. We find no merit in his arguments.
 {¶ 22} The analysis of a retaliatory-discharge claim under both federal and state law is the same and involves a burden-shifting approach.[9] The plaintiff first bears the burden to present a prima facie case by showing that (1) he engaged in protected activity; (2) his employer knew that he had engaged in that activity; (3) the employer took adverse action against him; and (4) a causal connection existed between the protected activity and the adverse employment action.[10]
 {¶ 23} To show the causal-connection element, the plaintiff must present evidence sufficient to raise the inference that his protected activity was the likely reason for the adverse actions. The plaintiff can show the causal link by evidence of *Page 8 
circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by the adverse action.[11] But timing alone is not sufficient to show a causal connection.[12]
 {¶ 24} In this case, Greene presented no evidence of a causal link between the protected activity and the adverse employment actions other than his subjective feeling that they were retaliatory. The record shows only that he filed various complaints, many of which his various supervisors were unaware of, and that he was subject to discipline at work. That evidence was not sufficient to meet his burden. Consequently, the trial court did not err in granting summary judgment to all the defendants on his retaliatory-discharge claims.
 IV. Conspiracy Claims {¶ 25} Greene also argues that the trial court erred in granting summary judgment in favor of Bley and Kramer on his claim for conspiracy under Section 1985, Title 42, U.S. Code because genuine issues of material fact existed for trial. We find no merit in this argument.
 {¶ 26} Section 1985 provides a private civil remedy for individuals injured by conspiracies to deprive them of their right to equal protection under the laws.[13] The plaintiff must prove the existence of a conspiracy that is aimed at interfering with any right or privilege of a United States citizen and that is motivated by a racial or other discriminatory animus.[14] *Page 9 
 {¶ 27} Greene also contends that the trial erred in granting summary judgment in favor of Bley and Kramer on his state common-law civil conspiracy claim. Civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent of one alone, resulting in actual damages."[15]
 {¶ 28} Greene could not have prevailed on either of these claims because he failed to present any evidence of a conspiracy. He contends that Bley and Kramer conspired with Lewis to provide confidential medical records to Lewis to post on his website. But Greene himself acknowledged that he had no evidence to support this claim. The only evidence he could point to was his belief that Bley and Lewis were friends, which was insufficient to demonstrate a conspiracy. Consequently, the trial court did not err in granting summary judgment in favor of Bley and Kramer on these claims, and we overrule Greene's first, second, and third assignment of error.
 V. Invasion of Privacy {¶ 29} Finally, in his fourth assignment of error, Greene contends that the trial court erred in granting summary judgment in favor of all defendants on his invasion-of-privacy claim. He argues that material issues of fact existed concerning this claim because his private medical information was disseminated "without a legitimate business purpose, in bad faith and with a corrupt and malicious intent." This assignment of error is not well taken. *Page 10 
 {¶ 30} Ohio recognizes three types of actions for invasion of privacy. The one applicable to this case is the "publicizing of one's private affairs with which the public has no legitimate concern."[16]
 {¶ 31} Greene set forth no facts showing that Bley, Kramer, or Butler was the individual who had actually disclosed private facts about Greene.[17] Further, Greene did not dispute that his allegedly private records were actually records that anyone could obtain through a Freedom of Information Act request. "There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public[.]"[18] Consequently, the trial court did not err in granting summary judgment in favor of all defendants on Green's invasion-of-privacy claim, and we overrule his fourth assignment of error.
 VI. Summary {¶ 32} In sum, we find no material issues of fact. Construing the evidence most strongly in Greene's favor, we hold that reasonable minds could have come to but one conclusion-that Greene had failed to prove any of his claims-and that all the defendants were entitled to judgment as a matter of law. Consequently, the trial court did not err in granting summary judgment in favor of all the defendants on all of Greene's claims.[19] We overrule all of Greene's assignments of error and affirm the trial court's judgment.
Judgment affirmed.
 SUNDERMANN, P.J., and HILDEBRANDT, J., concur. *Page 11 
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] (1973), 411 U.S. 792, 93 S.Ct. 1817.
[2] See Williams v. Akron, 107 Ohio St.3d 203, 2005-Ohio-6268,837 N.E.2d 1169, ¶ 25; Brown v. Dover Corp., 1st Dist. No. C-060123, 2007-Ohio-2128, ¶ 15-16.
[3] See McDonnell Douglas, supra, at 802; Williams, supra, at ¶ 10-12.
[4] Texas Dept. of Comm. Affairs v. Burdine (1981), 450 U.S. 248, 253,101 S.Ct. 1089; Bullock v. Totes, Inc. (Dec. 22, 2000), 1st Dist. No. C-000269.
[5] Burdine, supra, at 253; Coryell v. Bank One Trust Co., N.A.,101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 9; Brown, supra, at ¶ 16.
[6] Clark v. Christ Hosp., 1st Dist. No. C-060342,2007-Ohio-4317, ¶ 23; Bucher v. Sibcy Cline, Inc. (2000),137 Ohio App.3d 230, 240, 738 N.E.2d 435.
[7] Clark, supra, at ¶ 24; Bucher, supra, at 241; Ercegovich v.Goodyear Tire Rubber Co. (C.A.6, 1998), 154 F.3d 344, 353.
[8] Bucher, supra, at 241; Ercegovich, supra, at 352.
[9] Hollingsworth v. Time Warner Cable, 157 Ohio App.3d 539,2004-Ohio-3130, 812 N.E.2d 976, ¶ 40.
[10] Greer-Burger v. Temesi, 116 Ohio St.3d 324, 2007-Ohio-6442,879 N.E.2d 174, ¶ 13; Hollingsworth, supra, ¶ 40.
[11] Pflanz v. Cincinnati, 149 Ohio App.3d 743, 2002-Ohio-5492,778 N.E.2d 1073, ¶ 53.
[12] Cunningham v. Kroger Co., 1st Dist. No. C-050990,2006-Ohio-5900, ¶ 16; Pflanz, supra, at ¶ 57.
[13] Griffin v. Breckenridge (1971), 403 U.S. 88, 102-103,91 S.Ct. 1790; Roe v. Franklin Cty. (1996), 109 Ohio App.3d 772, 781,673 N.E.2d 172.
[14] United Brotherhood of Carpenters Joiners v. Scott (1983),463 U.S. 825, 828-829, 103 S.Ct. 3352; Johnson v. Ferguson-Ramos, 10th Dist. No. 04AP-1180, 2005-Ohio-2280, ¶ 63;Roe, supra, at 781.
[15] Brose v. Bartlemay (Apr. 16, 1997), 1st Dist. No. C-960423, quoting Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, 419, 650 N.E.2d 863.
[16] Housh v. Peth (1956), 165 Ohio St. 35, 133 N.E.2d 340, paragraph two of the syllabus; Pollock v. Rashid (1996), 117 Ohio App.3d 361, 369,690 N.E.2d 903.
[17] See Hall v. The Jewish Hosp. of Cincinnati (June 2, 2000), 1st Dist. No. C-990571; Greenwood v. Taft, Stettinius Hollister (1995), 105 Ohio App.3d 295, 303, 663 N.E.2d 1030.
[18] Pollock, supra, at 369.
[19] See Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46; Stinespring v. Natorp Garden Stores, Inc. (1998),127 Ohio App.3d 213, 215-216, 711 N.E.2d 1104. *Page 1